**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 18-cv-00292-CMA-GPG

JENNIFER TURNER,

    Plaintiff,

v.

EFINANCIAL, LLC,

    Defendant,

ALL WEB LEADS, INC.,

    Defendant-Intervenor.

---

**ORDER STAYING CASE DURING THE PENDENCY OF ARBITRATION BETWEEN DEFENDANT-INTERVENOR ALL WEB LEADS AND PLAINTIFF JENNIFER TURNER AND DENYING PLAINTIFF'S MOTION TO STAY ARBITRATION**

---

On September 6, 2018, this Court ordered the Parties to show cause as to why this case should not be stayed until the resolution of pending arbitration between Plaintiff Jessica Turner and Defendant-Intervenor All Web Leads, Inc. (the "Turner-AWL Arbitration"). (Doc. # 58.)[1] All parties timely responded to the Order. (Doc. ## 59, 60, 62.) Defendant Efinancial, LLC and All Web Leads, Inc. ("AWL") agree that this case should be stayed pending the Turner-AWL Arbitration because, they assert, the

---

[1] The Court learned of the pending Turner-AWL Arbitration when reviewing the documents submitted by Defendant Efinancial, LLC with its Motion to Compel Plaintiff to attend arbitration with Efinancial. (Doc. # 46-5.) The Parties have all since confirmed the existence of the Turner-AWL Arbitration. (Doc. ## 59, 60, 61, 62.)

resolution of that Arbitration will be dispositive of the instant matter. (Doc. # 59, 60.) Ms. Turner, however, responds that this case should not be stayed because there exists no contract between the Parties, much less an agreement to arbitrate. (Doc. # 62.) Ms. Turner accordingly filed a Motion requesting that this Court stay the Turner-AWL Arbitration and instead allow her present claims to proceed in this venue. (Doc. # 61.) For the following reasons, the Court finds that a stay of this litigation pending the outcome of the Turner-AWL Arbitration is warranted. The Court accordingly denies Plaintiff's Motion to Stay that Arbitration.

I. **BACKGROUND**

At issue in the underlying case is whether Efinancial violated the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227, when it sent Ms. Turner five text messages regarding life insurance between August and November 2017. (Doc. # 1 at ¶ 1.) Ms. Turner contends that these text messages were unsolicited and unwanted. (*Id.* at ¶ 22, 28.) Efinancial responds that it appropriately obtained Ms. Turner's information and consequently sent her text messages after she visited AWL's website and thereby consented to receive communication from Efinancial.

As pertinent here, AWL is a corporation that "sells insurance leads to insurance providers." (Doc. ## 48 at 1; 27 at 2.) "[A]s a part of its business, AWL operates . . . a website for consumers that are looking for insurance quotes." (Doc. # 27 at 2.) When a consumer visits AWL's website, the consumer provides contact information, "which includes a telephone number," and then clicks on a "Get My Quotes" button. (Doc. # 46 at 1.) By clicking on the "Get My Quotes" button, the consumer authorizes "up to eight

insurance companies or their agents or partner companies, to contact [the consumer] at the number . . . provided." (Doc. # 46-1 at 2.) Efinancial is one of the agencies with whom AWL has agreed to share consumer information, provided they consent by clicking on the "Get My Quotes" button. Also by clicking on the "Get My Quotes" button, the consumer agrees to AWL's "Terms and Conditions." (*Id.*) Among other things, those terms and conditions contain an Agreement to Arbitrate. (Doc. # 46-3.) It provides that "all disputes or claims that have arisen or may arise . . . relating in any way to or arising out of" the consumers "use of [AWL's] Services . . . shall be resolved exclusively through final and binding arbitration." (*Id.*)

Like Efinancial, AWL contends that Ms. Turner visited AWL's website and clicked on the "Get My Quotes" button, thereby (1) permitting Efinancial to contact her, and (2) agreeing to AWL's Terms and Conditions, including the Agreement to Arbitrate. Accordingly, on May 25, 2018, AWL, who agreed to defend Efinancial against claims like those in this case, filed a demand for arbitration against Plaintiff with the American Arbitration Association (the "Turner-AWL" Arbitration).[2] (Doc. # 46-5.) That arbitration, which addresses the same issues raised in this case, is currently pending.

Plaintiff denies ever visiting AWL's website and requests that the Turner-AWL Arbitration be stayed so that her claims against Efinancial can proceed in this venue; AWL and Efinancial conversely request for *this* litigation to be stayed so that the issues can proceed through the Turner-AWL Arbitration. The Court finds that the latter approach is more appropriate at this time.

---

[2] EWL also filed a Motion to Compel Arbitration in this Court. (Doc. # 45.)

## II. ARBITRATION STANDARDS

The district court has "broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 708 (1997). A federal court may dismiss or stay federal proceedings when a parallel or duplicative proceeding is pending in another forum. *Rienhardt v. Kelly*, 164 F.3d 1296, 1302 (10th Cir. 1999). The doctrine likewise applies to parallel or duplicative proceedings pending in arbitration. *THI of New Mexico at Las Cruces, LLC v. Fox*, 727 F. Supp. 2d 1195, 1208 (D.N.M. 2010). Indeed, 9 U.S.C. § 3 provides that the Court "shall" do so "upon being satisfied" that an agreement to arbitrate exists that covers the issues involved in litigation and to which the parties have agreed. *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1283 (10th Cir. 1997) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943–45 (1995)).

A court may also stay ongoing arbitration in favor of federal litigation. Although no provision of the Federal Arbitration Act or the Federal Rules of Civil Procedure expressly allows this Court to do so, some courts have relied on 9 U.S.C. § 4 as implicitly providing authority for a stay of arbitration proceedings under "appropriate circumstances." *See Westmoreland Capital Corp. v. Findlay*, 100 F.3d 263, 266 n. 3 (2d Cir. 1996) ("While § 3 of the FAA gives federal courts the power to stay trials pending arbitration, we note that a number of courts have held that, in appropriate circumstances, § 4 of the FAA may be applied to stay or enjoin arbitration proceedings."); *see also Tai Ping Ins. Co., Ltd. v. M/V Warschau*, 731 F.2d 1141, 1144–

46 (5th Cir.1984) (suggesting that an "appropriate circumstance" for a stay may be found if the dispute is not covered by the arbitration agreement.)

Other courts have stayed arbitration proceedings in reliance on the court's inherent power. *See Wells Enterprises, Inc. v. Olympic Ice Cream*, 903 F. Supp. 2d 740, 751 (N.D. Iowa 2012); *see also Landis v. North American Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.").

Regardless of the framework used to review a motion to stay an arbitration proceeding or a motion to stay litigation pending arbitration, the court has wide discretion in making this decision. S*ee Rogers v. Ameriprise Financial Servs., Inc.*, No. 07 C 6876, 2008 WL 4826262, at *2 (N.D.Ill. Nov. 4, 2008) (noting that the decision to issue a stay rests within the court's discretion which must be exercised in a manner that is consistent with equity and judicial economy). Moreover, the Federal Arbitration Act "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Pikes Peak Nephrology Assocs., P.C. v. Total Renal Care*, Inc., No. CIV.A09CV00928CMAMEH, 2010 WL 1348326, at *5 (D. Colo. Mar. 30, 2010) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)).

Finally, courts "routinely" uphold internet agreements[3] to arbitrate provided the consumer had "reasonable notice, either actual or constructive, of the terms of the putative agreement and . . . manifested asset to those terms." *Vernon cv. Qwest Commc'ns Int'l, Inc.*, 857 F.Supp.2d 1135, 1149 (D. Colo. 2012.)

### III.     ANALYSIS

The only issue before the Court is whether Ms. Turner visited the AWL website and clicked on the "Get My Quotes" button, thereby assenting to the Agreement to Arbitrate. Indeed, Ms. Turner's entire stance against staying this case pending the AWL Arbitration rests on her contention that she never visited AWL's website or, therefore, agreed to arbitrate her instant claims against Efinancial.

Having thoroughly reviewed the briefing, record, and law pertinent to the resolution of this issue, the Court rejects Ms. Turner's contentions that she did not visit the AWL Website for the following reasons.

First, AWL's Vice President of Marketing has submitted a sworn declaration contending otherwise—affirming that Ms. Turner "visited www.insurancequotes.com, a website operated by AWL, provided her contact information including her telephone number, and clicked the "Get My Quotes button." (Doc. # 46 at 1.) This declaration is supported by a second declaration by Michael Gooding, the deputy general counsel and

---

[3] Internet agreements can take several forms, including (1) "click-wrap agreements" which present the consumer with terms and conditions followed by an affirmative assent mechanism—like an "I agree" button; (2) browse-wrap agreements that require no affirmative "click" by the user; and (3) "hybrid agreements," where "the terms being accepted do not appear on the same screen as the accept button, but are available with the use of hyperlink." *Vernon v. Qwest Commc'ns Int'l, Inc.*, 857 F. Supp. 2d 1135, 1149 (D. Colo. 2012). The pertinent agreement in this case is a hybrid agreement.

6

chief compliance officer at Efinancial, stating that Efinancial obtained Ms. Turner's contact information from AWL. (Doc. # 47.) Ms. Turner has submitted no information or evidence refuting these declarations. At this stage, her general denials and statements that she "do[es] recall visiting . . . the website" or "agreeing to arbitrate" are insufficient to defeat arbitration. (Doc. # 2.) *See Stein v. Burt-Kuni One, LLC*, 396 F.Supp.2d 1211, 1213 (D. Colo. 2005) (whether to compel arbitration is governed by a standard similar to that governing a motion for summary judgment, where general denials do not suffice to create a general issue of disputed material fact).

Second, Ms. Turner, by failing to provide timely discovery responses, has already admitted that she visited the AWL Website and clicked on the "Get My Quotes" button. Specifically, she did not timely respond to the following requests for admission:

> **REQUEST FOR ADMISSION NO. 1.**
> Admit that, on or about April 11, 2017, you entered the information requested by the web form or the mobile form attached as Exhibit A and clicked the "Get My Quote" button.
>
> **REQUEST FOR ADMISSION NO. 2.**
> Admit that, on or about June 24, 2017, you again entered the information requested by the web form or the mobile form attached as Exhibit A and clicked the "Get My Quote" button.
>
> **REQUEST FOR ADMISSION NO. 3.**
> Admit that, on or about August 14, 2017, you entered the information requested by the web form or the mobile form attached as Exhibit B and clicked the "Get My Quote" button.
>
> **REQUEST FOR ADMISSION NO. 4.**
> Admit that, on or about November 29, 2017, you entered the information requested by the web form or the mobile form attached as Exhibit C and clicked the "Get My Quote" button.

(Doc. # 47–1.) Because Ms. Turner did not timely respond to these requests, these matters are deemed admitted pursuant to Federal Rule of Civil Procedure 36(a)(3).[4] Accepting the admissions as true, Ms. Turner's contentions that she did not visit AWL's website or click on the "Get My Quote" button are without merit.[5]

Third, earlier in this litigation, Ms. Turner agreed that a key issue for this Court's consideration would be whether the consent language on AWL's website satisfied prior express written consent under the TCPA. (Doc. # 23 at 2.) Indeed, the parties agreed to initially limit discovery to allow Efinancial to move for partial summary judgment related to this consent language, which was "purportedly used by Defendant and viewed by Plaintiff." (*Id.* at 5.) Plaintiff has thereby agreed, at least once prior to her discovery admissions, that she visited the AWL website.

For all these reasons, the Court finds that there is credible and persuasive evidence that Ms. Turner visited the AWL Website, clicked on the "Get My Quotes" button, and was thereby notified of the Agreement to Arbitrate included in the Terms and Conditions of AWL's operation. Based on the existence of an Agreement to

---

[4] Ms. Turner responded to these requests for admission nearly one month late. (Doc. # 47.) Ms. Turner states that her late-filed responses are attributable to correspondence with Efinancial, wherein Efinancial advised that it was working on a stipulation that would "obviate the need for her to respond" to the requests for admission. The last of these emails occurred, however, in early May 2018—over a month before Ms. Turner's responses to the interrogatories were due. Between then and June 8, 2018 (the date her responses were due), Ms. Turner never inquired as to the status of the purported stipulation or requested for an extension of time to respond to the requests for admission. It is Ms. Turner's responsibility to comply with important discovery deadlines or to request an extension if that deadline looks untenable. Neither occurred in this case and the Court finds no good cause to excuse the delay.

[5] Of note, Plaintiff's late responses to the requests for admission did not expressly disclaim visiting AWL's website or clicking on the "Get My Quotes" button. Instead, she stated, "Plaintiff lacks knowledge or information to admit or deny. Plaintiff has made a reasonable inquiry and the information she knows or can readily obtain is insufficient to enable her to admit or deny."

Arbitrate, the Court finds no reason to stay the pending Arbitration between Ms. Turner and AWL.[6] Moreover, because that Arbitration is intended to address the same issues raised in this litigation, to prevent duplicative, contrary rulings and a waste of judicial resources, the Court, in its discretion, stays this litigation pending the outcome of the Turner-AWL Arbitration.[7]

## IV.     CONCLUSION

Based on the foregoing, the Court DENIES Ms. Turner's Motion to Stay All Web Leads' Pending Arbitration Demand. (Doc. # 61.) Instead, the Court, at AWL's and Efinancial's request (Doc. ## 59, 60), STAYS this case pending resolution of the pending Turner-AWL Arbitration.

The Court FURTHER ORDERS that this case be ADMINISTRATIVELY CLOSED pursuant to D.C.COLO.LCivR 41.2, subject to re-opening after resolution of those proceedings.

The Court FURTHER ORDERS that the Parties SHALL FILE a status report with this Court on or before 12/26/2018, and every ninety days thereafter, advising this Court

---

[6] In so concluding, the Court also declines to address Ms. Turner's brief alternative arguments against the enforceability and scope of the Agreement to Arbitrate, which she raised in response to Efinancial's Motion to Compel Arbitration, but not in response to this Court's Order to Show Cause or in her Motion to Stay Arbitration. The question of who has the "primary power to decide arbitrability turns upon what the parties agreed about the matter." *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1280 (10th Cir. 2017). In this case, the Agreement to Arbitrate clearly provides that the arbitrator, not this Court, has the "exclusive authority" to rule on issues regarding arbitrability, including "enforceability" or scope of the agreement and whether the agreement is "void or voidable." (Doc. # 46-4.) The matter is, therefore, between left for resolution during the pending AWL Arbitration.

[7] Likewise, the Court need not address Efinancial's pending Motion to Compel Arbitration (Doc. # 45), wherein Efinancial requests to arbitrate the same issues being addressed in the Turner-AWL Arbitration. The Court, therefore, denies the Motion as moot.

as to the status of the Turner-AWL Arbitration, until those proceedings have been resolved.

Based on this resolution, the Court also DENIES AS MOOT Efinancial's Motion to Compel Arbitration. (Doc. # 45.)

DATED: September 27, 2018

BY THE COURT:

*[signature]*
CHRISTINE M. ARGUELLO
United States District Judge